IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHARLES LIMA,<br><br>      Plaintiff,<br><br>  vs.<br><br>UNITED STATES DEPARTMENT OF EDUCATION; EDUCATIONAL CREDIT MANAGEMENT CORPORATION,<br><br>      Defendants. | CIVIL NO. 15-00242 KSC<br><br>ORDER: (1) DENYING PLAINTIFF CHARLES LIMA'S MOTION FOR SUMMARY JUDGMENT AND (2) GRANTING DEFENDANT EDUCATIONAL CREDIT MANAGEMENT CORPORATION'S MOTION FOR SUMMARY JUDGMENT |

ORDER: (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND (2) GRANTING DEFENDANT EDUCATIONAL CREDIT MANAGEMENT
CORPORATION'S MOTION FOR SUMMARY JUDGMENT

Before the Court are Plaintiff Charles Lima's

("Plaintiff") Motion for Summary Judgment and Defendant

Educational Credit Management Corporation's ("ECMC") Motion for

Summary Judgment, filed October 3, 2016, and November 30, 2016,

respectively. The Court elects to decide these matters without a

hearing pursuant to Rule 7.2(d) of the Local Rules of Practice

for the U.S. District Court for the District of Hawaii. For the

reasons articulated below, the Court HEREBY DENIES Plaintiff's

Motion and GRANTS ECMC's Motion.

BACKGROUND

I. Factual History

On November 10, 1976, December 6, 1977, and March 27,

1979, Plaintiff signed Interim Promissory Notes and Disclosures

("Notes") in the amounts of $2,500.00, $2,500.00, and $3,500.00,

respectively, for attendance at Antioch School of Law.  ECMC's

Concise Statement of Facts ("CSF") at ¶ 2, Ex. 1.  New York State

Higher Education Services Corporation ("NYHESC") was the original

guarantor for the Notes, and was established for the purpose of

acting as a "guaranty agency".[1]  Id. at ¶ 4, Decl. of Jennifer

Skerbinc ("Skerbinc Decl.") at ¶ 8.  NYHESC lent money,

guaranteed student loans, and entered into cooperative agreements

with the federal government to administer and operate federal

student aid programs.  Id.; N.Y. Educ. Law § 652(2); N.Y. Educ.

Law § 680(1).

Plaintiff defaulted on his student loan obligation in

July 1980.  ECMC's CSF at ¶ 6; Skerbinc Decl. at ¶ 9.  The lender

of the loans submitted a claim for reimbursement in the amount of

$8,733.09 to NYHESC.  ECMC's CSF, Ex. 2.  The claim for

reimbursement identified three loan disbursements - $2,500.00 in

1976; $2,500.00 in 1977; and $3,500.00 in 1979 - which amounts

are consistent with Plaintiff's Notes.  Id.  As guarantor of the

loans, NYHESC paid the lender's claim.  Id.  NYHESC subsequently

filed a reinsurance claim with the U.S. Department of Education

("DOE").

---

[1]  A "guaranty agency" is a "State or private nonprofit
organization that has an agreement with the Secretary under which
it will administer a loan guarantee program under the [Higher
Education] Act [of 1965, as amended, 20 U.S.C. 1071 et seq.]."
34 C.F.R. § 682.200(b).

NYHESC sought, and on September 26, 1991 obtained, a judgment in the District Court of the State of New York in the amount of $13,898.39 ("1991 Judgment").[2] <u>Id.</u>, Ex. 3. By agreement dated September 18, 2008, NYHESC and DOE decided that certain judgments obtained by other guarantee agencies would be assigned to ECMC. <u>Id.</u>, Ex. 4. As a result, ECMC assumed the guarantor role over the accounts, including Federal Family Education Loan Program ("FFELP") guarantor responsibilities. <u>Id.</u>

On September 18, 2008, NYHESC and ECMC entered into an agreement for transfer of judgment accounts, whereby NYHESC relinquished and assigned to ECMC all right, title, and interest in and to certain judgment accounts "effective on the date of receipt by ECMC of a Letter of Assignment executed by [NYHESC] attached to a loan transmission form listing the Judgment Accounts to be transferred." <u>Id.</u>, Ex. 5. Pursuant to the agreement, "[u]pon assignment of a Judgment Account, ECMC shall assume all the remaining guaranty responsibilities for the Judgment Account." <u>Id.</u> By letter dated March 12, 2009, NYHESC assigned certain student loans identified in a manifest attachment to the letter, including Plaintiff's Notes. <u>Id.</u>, Ex. 6.

---

[2] This amount includes the $8,733.09 set forth in the claim for reimbursement, $5,166.30 in interest, and $90.00 in costs and disbursements. ECMC's CSF, Ex. 3.

On August 12, 2009, ECMC, on DOE's behalf, mailed written notice ("Notice") to Plaintiff informing him that DOE intended to collect on his defaulted Notes by treasury offset. Id., Skerbinc Decl. at ¶ 14, Ex. 7. Plaintiff did not respond to the Notice and as a result, the Department of Treasury ("DOT") commenced the offset of Plaintiff's Social Security benefits.

On September 18, 2012, ECMC received a letter dated August 17, 2012 from Plaintiff. Id., Ex. 9. In the letter, Plaintiff claimed to have never received the Notice and he requested that the Notice, together with any supporting documents, and copies of documents evidencing the underlying debt, be sent to him. Id.

ECMC responded on September 25, 2012, explaining that Plaintiff's account was transferred from NYHESC to ECMC, with ECMC serving as the new guarantor of the loans. Id., Ex. 10. ECMC enclosed a copy of the Notice and informed Plaintiff that it was in the process of obtaining the relevant promissory note. Id.

On October 1, 2012, ECMC sent Plaintiff copies of his Notes, related loan applications, and the 1991 Judgment. Id.

Plaintiff responded by sending ECMC a memorandum dated January 31, 2013, asserting a number of challenges to ECMC's claims and requesting a full justification of DOE's position with documentary and legal support. Pl.'s CSF, Ex. F.

In early 2013, Plaintiff communicated with DOE's Federal Student Aid Ombudsman Group to ascertain the validity of the debt held by ECMC. Pl.'s Reply, Ex. A; ECMC's CSF, Ex. 12.

A letter dated March 5, 2013, from ECMC to Plaintiff, explained that "the student loans ECMC holds in your name is [sic] a Stafford Subsidized loan which was disbursed on January 29, 1979 in the amount of $8,500.00 for educational expenses incurred at Antioch University . . . Enclosed are copies of the promissory notes and loan applications." ECMC's CSF, Ex. 11.

On April 3, 2013, Plaintiff responded, accusing ECMC of raising more questions than it answered, and challenging ECMC's assertion of the existence of a Stafford Subsidized loan dated January 29, 1979. Pl.'s CSF, Ex. H. Plaintiff requested a copy of the aforesaid note.

On April 17, 2013, the ombudsman opined that:

ECMC has demonstrated that it holds a federal student loan account for which you are responsible. You have not demonstrated that all federal student loans you took have been paid. As such, collection efforts such as offset of federal payments is an option that ECMC may exercise to recover those funds borrowed through the federal student loan program.

The student loan ombudsman provides informal and impartial dispute resolution services. Our office does not have enforcement authority or the ability to act as an advocate for any party to a dispute. Further, this office cannot compel a party to vacate a position and agree to or with a particular outcome.

ECMC maintains the debt it holds is valid and

> collectable.  You maintain the debt has been
> satisfied.  Insofar as both parties have reached
> an impasse, the informal dispute resolution
> process is no longer the appropriate venue for
> this dispute.  You must now consider your
> available options going forward, including formal
> resolution processes through the courts.

ECMC's CSF, Ex. 12.

Via letter dated May 9, 2013, ECMC again transmitted copies of the Notes to Plaintiff.  Pl.'s CSF, Ex. I.

II.  Procedural History

On June 26, 2015, Plaintiff commenced this action, asserting the following claims against DOE[3] and ECMC: 1) breach of 31 U.S.C. § 3716 (Count I); 2) serial violations of the Fair Debt Collections Practices Act[4] (Count II); 3) conversion (Count III); and 4) denial of due process (Count IV).  Compl. at 5-7.  In the prayer for relief, Plaintiff requests:  1) a declaration that his loan obligation is not a federal student loan or a claim of the U.S. Government and is therefore not subject to administrative offset; 2) an order prohibiting garnishment or otherwise attaching or levying upon Plaintiff's Social Security Benefits or assets; 3) a declaration that ECMC's actions violate the Fifth Amendment of the U.S. Constitution and 31 U.S.C. § 3716; 4) an order requiring

---

[3]  DOE was dismissed from the action on July 27, 2016.  Doc. No. 63.

[4]  Plaintiff incorrectly identified this as the Fair Credit Collections Practices Act.

6

reimbursement for all monies garnished from Plaintiff's Social
Security benefits; 5) an award of statutory damages pursuant to
15 U.S.C. § 1692k(a); 6) an award of punitive damages equal to
the salary and commissions paid to ECMC's CEO in 2014, or $1.5
million, whichever is lower; 7) an award of pre- and post-
judgment interest; 8) an award of costs and expenses, including
attorneys' fees; and 9) any other appropriate relief.  <u>Id.</u> at 7-
8.

LEGAL STANDARD

Summary judgment is appropriate when there is no
genuine issue of material fact and the moving party is entitled
to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(a).  "A
party seeking summary judgment bears the initial burden of
informing the court of the basis for its motion and of
identifying those portions of the pleadings and discovery
responses that demonstrate the absence of a genuine issue of
material fact."  <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d
978, 984 (9th Cir. 2007) (citing <u>Celotex Corp. v. Citrate</u>, 477
U.S. 317, 323 (1986)); <u>T.W. Elec. Serv., Inc. v. Pac. Elec.
Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).  In a
motion for summary judgment, the court must view the facts in the
light most favorable to the nonmoving party.  <u>State Farm Fire &
Cas. Co. v. Martin</u>, 872 F.2d 319, 320 (9th Cir. 1989).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. T.W. Elec., 809 F.2d at 630; Fed. R. Civ. P. 56(c). The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. T.W. Elec., 809 F.2d at 630; Blue Ocean Preservation Soc'y v. Watkins, 754 F. Supp. 1450, 1455 (D. Haw. 1991).

If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e). There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case. Celotex, 477 U.S. at 322; Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994); Blue Ocean, 754 F. Supp. at 1455.

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the

'specific facts' set forth by the nonmoving party, coupled with
undisputed background or contextual facts, are such that a
rational or reasonable jury might return a verdict in its favor
based on that evidence." T.W. Elec., 809 F.2d at 631 (citing
Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986)).  Inferences
must be drawn in favor of the nonmoving party.  Id.  However,
when the opposing party offers no direct evidence of a material
fact, inferences may be drawn only if they are reasonable in
light of the other undisputed background or contextual facts and
if they are permissible under the governing substantive law.  Id.
at 631-32.  If the factual context makes the opposing party's
claim implausible, that party must come forward with more
persuasive evidence than otherwise necessary to show there is a
genuine issue for trial.  Bator v. Hawaii, 39 F.3d 1021, 1026
(9th Cir. 1994) (citing Cal. Architectural Bldg. Prods., Inc. v.
Franciscan Ceramics, 818 F.2d 1466, 1468 (9th Cir. 1987), cert.
denied, 484 U.S. 1006 (1988)).

ANALYSIS

I.   Subject Matter Jurisdiction

       As a threshold matter, ECMC challenges the
existence of subject matter jurisdiction with respect to
Plaintiff's 31 U.S.C. § 3716 claim.  ECMC contends that courts
only have jurisdiction to address an offset claim where the claim
is asserted against the agency that requested the offset.  Given

9

DOE's dismissal from this action, ECMC posits that jurisdiction is lacking as to the § 3716 claim. The Court disagrees.

ECMC cites multiple cases in support of this proposition, but they are distinguishable as they involve 26 U.S.C. § 6402(g).[5] In <u>Dasisa v. Dep't of Treasury</u>, 951 F. Supp. 2d 45, 46 (D.D.C. 2013), for example, the plaintiff alleged that DOT "improperly offset a portion of his tax refund to collect a debt wrongfully claimed by [DOE]." <u>Id.</u> DOT moved to dismissed based on lack of subject matter jurisdiction pursuant to 26 U.S.C. § 6402(g), which strips courts of jurisdiction to challenge such debt collection practices. <u>Id.</u>

The <u>Dasisa</u> court explained that the foregoing statute "explicitly reserves plaintiff's ability to sue agency-claimants directly, <u>but it prohibits suits against DOT</u> merely for carrying out its statutory obligation to collect debts that agencies refer to it." <u>Id.</u> (emphasis added). Therefore, the plaintiff improperly named DOT, and had to instead sue DOE, which was claiming his debt. <u>Id.</u> Plaintiff's failure to name DOE as a defendant did not alone deprived the court of subject matter jurisdiction, however. It was § 6402(g)'s prohibition on suits against DOT that deprived the <u>Dasisa</u> court of jurisdiction.

_____

[5] Section 6402 concerns offsets to income tax refunds by DOT for debts owed to other federal agencies. Plaintiff challenges offsets to his Social Security benefits, not income tax refunds.

Here, DOT has not been named as a defendant and § 6402(g) is not at issue.[6]  Accordingly, Plaintiff's failure to retain DOE as a defendant does not divest this Court of jurisdiction with respect to Plaintiff's § 3716 claim.

II.  <u>Count I - Breach of 31 U.S.C. § 3716</u>

Plaintiff alleges that the outstanding loan is not a claim of the U.S. Government and is not collectible by way of administrative offset pursuant to § 3716.  Compl. at ¶ 20.  In addition, Plaintiff claims that by failing to provide him with the opportunity to inspect pertinent records, ECMC failed to comply with § 3716(a)(2).  <u>Id.</u> at ¶ 21.

The Debt Collection Act governs the procedures for collection of debts purportedly owed to the federal government. The Treasury Offset Program ("TOP") "allows a government agency to collect a debt owed to it by attaching certain specified federal benefits (such as Social Security benefits or federal pensions), assuming that the attachment is properly noticed and

---

[6] The other cases relied upon by ECMC are equally inapplicable.  <u>Jones v. United States</u>, No. CIV.A. 11-573 RLW AK, 2012 WL 1424170, at *4 (D.D.C. Feb. 13, 2012) (citing § 6402(g) for the proposition that jurisdiction is lacking to review the validity of set-off unless the claim is brought against the agency that requested it); <u>Setlech v. United States</u>, 816 F. Supp. 161, 166 (E.D.N.Y. 1993) (same); <u>Ibrahim v. United States</u>, 112 Fed. Cl. 333, 337 n.3 (2013) (noting that DOE is the proper party against which to bring a claim for unlawful offset because § 6402(g) prohibits claims against DOT).

the agency is unable to collect the debt by other means." Yagman
v. Whittlesey, No. 2:12-cv-08413-SVW-CW, 2013 WL 4760968, at *1
(C.D. Cal. Aug. 9, 2013), aff'd, 641 Fed. Appx. 683 (9th Cir.
2016); United States v. Mayer, No. 04-CR-100-1-SM, 2010 WL
4916561, at *1 (D.N.H. Dec. 3, 2010) ("The Treasury Offset
Program (TOP), see 31 U.S.C. § 3716, subjects to offset 'all
funds payable by the United States,' 31 U.S.C. § 3701(a)(1), to
an individual who owes delinquent federal debts, unless the
payment is exempted from offset by statute or regulation.").

Section 3716(a) provides, in pertinent part, that
"[a]fter trying to collect a claim from a person under section
3711(a) of this title, the head of an executive, judicial, or
legislative agency may collect the claim by administrative
offset." 31 U.S.C. § 3716(a); Lockhart v. United States, 546
U.S. 142, 144 (2005) ("The Debt Collection Act of 1982, as
amended, provides that, after pursuing the debt collection
channels set out in 31 U.S.C. § 3711(a), an agency head can
collect an outstanding debt 'by administrative offset.'").
Before a federal agency refers the debt to DOT, it must provide
the debtor

> (1) written notice of the type and amount of the
> claim, the intention of the head of the agency to
> collect the claim by administrative offset, and an
> explanation of the rights of the debtor under this
> section;(2) an opportunity to inspect and copy the
> records of the agency related to the claim;(3) an
> opportunity for a review within the agency of the
> decision of the agency related to the claim; and

12

> (4) an opportunity to make a written agreement
> with the head of the agency to repay the amount of
> the claim.

Salazar v. Omaha VA Med. Ctr., No. 8:14CV304, 2015 WL 224643, at

*2 (D. Neb. Jan. 15, 2015) (citing 31 U.S.C. § 3716(a)); Yaqman,

2013 WL 4760968, at *1.

Notably, § 3716 does not provide a private cause

of action. Schaller v. United States, No. 3:10CV444/WS/EMT, 2011

WL 7052267, at *4 (N.D. Fla. Dec. 29, 2011), adopted by 2012 WL

136007 (N.D. Fla. Jan. 17, 2012); Yaqman v. Whittlesey, No.

2:12-CV-08413-SVW-CW, 2012 WL 5831169, at *2 (C.D. Cal. Nov. 2,

2012) ("Neither Section 3716 nor its implementing regulation, 31

C.F.R § 285.4, includes a provision for judicial review.").

Indeed, "§ 3716 [merely] provides the guidelines to be followed

to accomplish administrative offset." Schaller, 2011 WL 7052267,

at *4. Moreover, insofar as § 3716 applies only to executive,

legislative, and judicial agencies, Plaintiff cannot maintain

such a claim against ECMC.[7] Huertas, 2010 WL 2771767, at *9

(finding unviable the plaintiff's § 3716 claim against non-agency

---

[7] DOE would have been the only potentially liable party,
had it remained in the action. Huertas v. United States Dep't of
Educ., No. CIV 08-3959, 2010 WL 2771767, at *9 (D.N.J. July 12,
2010). Even then, Plaintiff would have been required to exhaust
administrative remedies before seeking redress in court. United
States v. Beulke, 892 F. Supp. 2d 1176, 1187 (D.S.D. 2012);
Shlikas v. United States Dep't of Educ., No. CIV. WDQ-09-2806,
2013 WL 2149752, at *8 (D. Md. May 15, 2013) (The "right to
judicial review is contingent upon [a plaintiff's] exhaustion of
administrative remedies").

defendants).  Consequently, the Court GRANTS summary judgment in ECMC's favor as to Plaintiff's § 3716 claim (Count I).

III. <u>Count II - Serial Violations of the Fair Debt Collection Practices Act</u>

Plaintiff claims that ECMC engaged in unfair practices pursuant to 15 U.S.C. § 1692f by garnishing his Social Security benefits "to collect monies neither owing nor authorized by agreement or otherwise permitted by law."  Compl. at ¶ 23. ECMC argues that because it is not a "debt collector" and/or it falls under the fiduciary exception contained in § 1692a(6) of the Fair Debt Collection Practices Act ("FDCPA"), Plaintiff's claim fails as a matter of law.

Finding that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(a), (e).  A violation of any of the prohibited activities listed in the FDCPA by a "debt collector" gives rise to a private cause of action.  15 U.S.C. § 1692k (addressing civil liability for debt collectors who fail to comply with provisions of the subchapter). "[I]f an individual or entity falls outside the [FDCPA's]

14

definition of 'debt collector'[, however,] the limitations and requirements established by the [FDCPA] do no[t] apply. <u>Pelfrey v. Educ. Credit Mgmt. Corp.</u>, 71 F. Supp. 2d 1161, 1166 (N.D. Ala. 1999), <u>aff'd</u>, 208 F.3d 945 (11th Cir. 2000); <u>Lasserre v. Educ. Credit Mgmt. Corp.</u>, No. 3:12-091, 2012 WL 2191628, at *2 (M.D. La. Jun. 14, 2012) ("Thus, the FDCPA does not apply to entities who are not debt collectors as that term is defined in the statute.").

Essential to Plaintiff's FDCPA claim is a finding that ECMC is a "debt collector" as defined by the FDCPA, and that it does not fall within one of the statutory exceptions identified in § 1692a(6). The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). Excepted from the term "debt collector" is "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement." 15 U.S.C. § 1692a(6)(F)(i).

Based on the record before the Court, the FDCPA is inapplicable to ECMC because it is not a "debt collector" and it falls under the fiduciary exception of the FDCPA.

A.  ECMC is not a "Debt Collector"

ECMC argues that it is not a "debt collector" because its primary purpose is to provide a guarantee to the lender and to assist in the administration of the FFELP, not to collect debts.  The Court agrees.  ECMC's principal purpose in this case was not merely to collect "debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The assignment by NYHESC to ECMC of judgment accounts, including Plaintiff's Notes, transferred "all right, title, and interest in the Judgment Accounts to ECMC."  ECMC's CSF, Ex. 4.  Upon assignment of judgment accounts, ECMC was contractually obligated to "assume all the remaining guaranty responsibilities for the Judgment Account."  Id., Ex. 5.  Given ECMC's assumption of Plaintiff's debt and the corresponding responsibilities thereto, it is not a "debt collector" as defined by the FDCPA.[8]  Rowe v. Educ. Credit Mgmt. Corp. ("Rowe II"), 730 F. Supp. 2d 1285, 1289 (D. Or. 2010) (concluding that ECMC was not a debt collector because it collected on behalf of itself as a guarantor of the loan in

---

[8]  Plaintiff argues that there can be no guarantor with respect to a phantom note.  However, whether or not ECMC is pursuing a legitimate debt has no bearing the applicability of the FDCPA, and pursuit of a phantom note would not transform ECMC into a "debt collector".  Rutz v. Educ. Credit Mgmt. Corp., No. 11-CV-1421-JM- NLS, 2012 WL 78394, at *2 (S.D. Cal. Jan. 9, 2012) ("While it is true that ECMC could be held liable for pursuing a nonexistent debt, that fact in no way establishes that it can be characterized a debt collector.  Under the law, a debt collector by definition must be pursuing debts of another entity.").

default, and stepped into the shoes of the original guarantor as the new holder); <u>Freeman v. Great Lakes Educ. Loan Servs.</u>, No. 3:12CV331/MCR/CJK, 2013 WL 2355541, at *6 (N.D. Fla. May 28, 2013) ("As a guarantor, ECMC holds and collects the debt subject to the right of USDOE to demand assignment . . . [s]imply put, ECMC is collecting its own debt as the current holder of the obligation. Accordingly, it is not a 'debt collector' under the FDCPA."); <u>Rutz</u>, 2012 WL 78394, at *2 (concluding that ECMC is not a debt collector, having assumed a debt pursuant to the law, and not solely for collection purposes).

     B.   <u>ECMC Falls Under the Fiduciary Exception of the FDCPA</u>

        Even if ECMC were a "debt collector", the fiduciary exception set forth in § 1692a(6)(F)(i) would prelude liability. The Ninth Circuit has established a two-part test that must be satisfied for an entity to come within the fiduciary exception: "First, the entity must have a 'fiduciary obligation.' Second, the entity's collection activity must be 'incidental to' its 'fiduciary obligation.'" <u>Rowe v. Educ. Credit Mgmt. Corp.</u> ("<u>Rowe I</u>"), 559 F.3d 1028, 1032 (9th Cir. 2009).

        1.   <u>ECMC is a Guaranty Agency</u>

        The parties dispute ECMC's status as a guaranty agency.

        Under the Higher Education Act [("HEA")] and the [FFELP], students can obtain low-interest loans from private lenders for tuition and educational expenses. State agencies and private non-profit

> institutions then guarantee the loans.  Guaranty
> agencies receive funds to administer the FFELP,
> including collecting defaulted loans.  When a
> student defaults on a loan, the guarantee agency
> pays the outstanding balance on the loan to the
> private lender and takes title to the loan.

Educ. Credit Mgmt. Corp. v. Cherish Prod. Inc., 247 F. Supp. 2d

1132, 1132-33 (D. Minn. 2003) (identifying ECMC as "a private

non-profit guaranty agency").  When they operate under the FFELP,

guarantee agencies act as fiduciaries of the DOE, and thus

satisfy the first requirement of the aforementioned test.  Rowe

I, 559 F.3d at 1034.  To determine guaranty agency status, this

Court looks for an agreement between ECMC and the DOE.  Bennett

v. Premiere Credit of N. Am., LLC ("Bennet II"), 504 Fed. Appx.

872, 877 (11th Cir. 2013) (per curiam).

Relying on an online New York Times article and

Wikipedia, Plaintiff claims that ECMC has not functioned as a

guaranty agency to the DOE since 2010.  Plaintiff's reliance on

these sources is misplaced and his contention is without merit.

It is widely established (and indeed well past 2010)

that ECMC is a guaranty agency.  Rowe I, 559 F.3d at 1032 ("There

is no dispute in this case that, at least generally speaking,

ECMC is a guaranty agency."); Bennett II, 504 Fed. Appx. at 878

(agreeing with the district court that "ECMC qualifies as a

guaranty agency under the HEA, and is therefore engaged in a

fiduciary relationship with the DOE"); Educ. Credit Mgmt. Corp.

v. Polleys, 356 F.3d 1302, 1304 (10th Cir. 2004); Lasserre, 2012

WL 2191628, at *2; <u>Wheeler v. Premiere Credit of N. Am., LLC</u>, 80
F. Supp. 3d 1108, 1112 (S.D. Cal. 2015); <u>Freeman</u>, 2013 WL
2355541, at *6; <u>Educ. Credit Mgmt. Corp. v. D.C.</u>, 471 F. Supp. 2d
116 (D.D.C. 2007); <u>Rutz</u>, 2012 WL 78394, at *1; <u>Rainey v. Educ.
Credit Mgmt. Corp.</u>, No. 14-CV-14210, 2016 WL 1594378, at *3 (E.D.
Mich. Apr. 21, 2016).  The evidence presented by ECMC compels the
same finding here.

    As already discussed in the preceding section, ECMC
obtained all right, title, and interest in Plaintiff's Notes upon
assignment of the same by NYHESC pursuant to the agreement
between the DOE and ECMC.  ECMC's CSF, Ex. 4.  In accordance with
that same agreement, ECMC acceded to "assume additional tasks
involving the transfer from other guaranty agencies to ECMC of
certain FFEL Program loans where a collection judgment has been
obtained."  <u>Id.</u>  What is more, following assignment, ECMC
assumed all guarantor responsibilities for Plaintiff's Notes and
other judgment accounts.  <u>Id.</u>, Ex. 5; <u>Rowe II</u>, 730 F. Supp. 2d at
1288-89 ("Even though the student loans at issue in this case
were already in default at the time ECMC became the guarantee
agency for the State of Oregon, it did assume all the fiduciary
obligations of the previous guaranty agency.").

    The agreement between NYHESC and ECMC concerning the
transfer of judgment accounts describes ECMC as having been
"created under the direction of [DOE] to provide specialized

19

guarantor services to [DOE] pursuant to FFEL Program including accepting transfer of title to certain student loan judgment accounts by entering into agreements with other FFEL guarantors, such as [NY]HESC." ECMC's CSF, Ex. 5. This is consistent with the DOE's designation and identification of ECMC as a guaranty agency. Guaranty Agency Contact List, https://ifap.ed.gov/drmaterials/attachments/appa.pdf (last visited Apr. 25, 2017); Bennett II, 504 Fed. Appx. at 877 (relying in part on the list of guaranty agencies posted on DOE's official website). For these reasons, the Court finds that ECMC is a guaranty agency and as such, it owes a fiduciary duty to DOE.

2. ECMC's Actions Were Incidental to its Fiduciary Obligation

The Court further finds that ECMC's actions were incidental to its fiduciary obligation. "The 'incidental to' requirement means that the collection activity must not be 'central to' the fiduciary relationship." Rowe I, 559 F.3d at 1034.

> Generally speaking, the collection of defaulted
> debts by a guaranty agency is "incidental to" its
> primary function. A central part of a guaranty
> agency's administrative function is – as the name
> suggests – guaranteeing student loans made by
> other entities. "The primary business purpose of
> [a guaranty agency] is administration of the
> Guaranteed Student Loan Program. While [a
> guaranty agency] regularly sends these
> [collection] notices, such activity is incidental
> to its primary function of administering the
> federal GSL Program."

Id. at 1035 (alterations in original) (citations omitted).  ECMC

has produced evidence that its collection efforts were performed

in its capacity as an FFELP guarantor.  ECMC's CSF at ¶ 15 & Exs.

4-5.  Jennifer Skerbinc, a litigation specialist in ECMC's Legal

Department, attested that "[a]ll collection activity by ECMC was

performed in its capacity as a [sic] FFELP guarantor and pursuant

to its duties thereunder."  Id., Skerbinc Decl. at ¶ 24.[9]

Plaintiff has failed to produce evidence to refute Ms. Skerbinc's

representation.  He cites portions of ECMC's Exhibit 4 for the

proposition that ECMC is not a guarantor of any loans or notes.[10]

However, the portions he references do not stand for such a

proposition, and in view of the evidence presented by ECMC,

---

[9]  Plaintiff takes issue with Ms. Skerbinc's declarations,
alleging that they contain conclusory statements.  Pl.'s Opp'n at
12.  The Court is unpersuaded by Plaintiff's argument and notes
that Plaintiff in many instances draws improper inferences and
presents conclusory statements.  Other courts have accepted Ms.
Skerbinc's representations.  Rainey, 2016 WL 1594378 at *3; cf.
AJ Reyes v. Educ. Credit Mgmt. Corp., No. 315CV00628 BASJMA, 2016
WL 2944294, at **3-6 (S.D. Cal. May 19, 2016).

[10]  Plaintiff's erroneous ECF citations made it difficult to
ascertain which documents he was referencing.  ECF citations
should reference the applicable document number on the docket,
not the Page ID#.  Ironically, Plaintiff accused ECMC of failing
to provide ECF citations as required by Judge Gillmor's September
24, 2015 memo (incorrectly identified as a September 23, 2015
memo), Pl.'s CSF in Opp'n to ECMC's Mot. at ¶ 12, but he did not
readily identify where documents could be found in ECF.
Moreover, Plaintiff referenced the memo, but failed to indicate
that it was from Judge Gillmor's requirement section on the court
website, as opposed to this action.  In any event, ECMC was not
obligated to reference Judge Gillmor's memo because the present
motions are being adjudicated by this Court.

Plaintiff's bald assertion and challenge do not create genuine issues of material fact.

Therefore, the Court agrees with the long line of cases that have concluded that ECMC is a guaranty agency whose actions were incidental to its fiduciary duties to DOE and it is not subject to liability under the FDCPA. <u>Pelfrey v. Educ. Credit Mgmt. Corp.</u>, 208 F.3d 945 (11th Cir. 2000) (affirming the district court's "granting [of] the defendant's motion for judgment as a matter of law on the ground that the [FDCPA] does not apply to the defendant, because the defendant is a 'person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation'"); <u>Bennett II</u>, 504 Fed. Appx. at 878 ("ECMC's status as a guaranty agency, and therefore its fiduciary relationship to the DOE, is direct evidence that it satisfies the fiduciary relationship exemption and is not subject to the provisions of the FDCPA."); <u>id.</u>, n.4 (noting that even if it applied the <u>Rowe I</u> test, ECMC is exempt because "(1) it has a fiduciary relationship with the DOE, and (2) its collection activities are incidental to that fiduciary obligation"); <u>Rowe II</u>, 730 F. Supp. 2d at 1289 (finding that the evidence conclusively established that the fiduciary exception applied to ECMC); <u>Lasserre</u>, 2012 WL 2191628, at *2 ("Guaranty agencies acting in their fiduciary capacity to the [DOE] fall

within the 'fiduciary' exception to the FDCPA . . . ECMC is a guaranty agency which operates pursuant to the regulations of the FFELP and is excepted from the FDCPA's definition of 'debt collector' because it is an entity attempting to collect on the debt of another under a bona fide fiduciary obligation."); Freeman, 2013 WL 2355541, at *6 ("Pursuant to the bona fide fiduciary obligation exception, ECMC is not subject to suit under the FDCPA."); Rainey, 2016 WL 1594378, at **3-4; Rutz, 2012 WL 78394, at *3.

Summary judgment is accordingly GRANTED in ECMC's favor with respect to Plaintiff's FDCPA claim (Count II).

IV. Count IV – Denial of Due Process[11]

Plaintiff alleges that ECMC has "arbitrarily and maliciously garnished [his Social Security] benefits without regard to due process of law and in breach of the Fifth Amendment." Compl. at ¶ 28. This is the totality of the claim, with no articulation of the legal elements of said claim or application of facts to the relevant law.[12] Based on this scant and conclusory allegation, taken together with the facts set out in the Complaint, it appears that Plaintiff is asserting a

---

[11] The Court is addressing Plaintiff's claims out of sequence because it elects to analyze all of Plaintiff's federal claims before Plaintiff's sole state law claim.

[12] Neither Plaintiff's Motion, Reply, nor Opposition to ECMC's Motion offer meaningful clarification.

23

procedural due process claim.[13]

ECMC contends that Plaintiff's due process claim is an attempt to create a private cause of action under the HEA where one does not exist, but even if he could maintain a due process claim, he was not deprived of due process because he received sufficient notice that DOE intended to recover his debt by offset. In his Reply, Plaintiff accuses ECMC of misunderstanding the notice issue, i.e., that it is not about timeliness or the address to which the notice was sent. Pl.'s Reply at 2. Plaintiff then accuses ECMC of falsifying documents, committing pejury, and having never sent the Notice. Id. at 3.

The Due Process Clause of the Fifth Amendment prohibits the United States . . . from depriving any person of property without 'due process of law.'" Dusenbery v. United States, 534

---

[13] Because Plaintiff was an attorney, he is not entitled to the liberal standards afforded to non-attorney pro se plaintiffs. Price v. Peerson, No. CV133390PSGJEMX, 2014 WL 12579823, at *4 (C.D. Cal. May 15, 2014) (citing Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 82 n.4 (2d Cir. 2011) ("[P]ro se attorneys . . . cannot claim the special consideration which the courts customarily grant to pro se parties."); Godlove v. Bamberger, Foreman, Oswald & Hahn, 903 F.2d 1145, 1148 (7th Cir. 1990) ("Ordinarily, we treat the efforts of pro se applicants gently, but a pro se lawyer is entitled to no special consideration."); Richards v. Duke Univ., 480 F. Supp. 2d 222, 234 (D.D.C. 2007) ("Because plaintiff is an attorney, she is not automatically subject to the very liberal standards afforded to a non-attorney pro se plaintiff because an attorney is presumed to have a knowledge of the legal system and needs less protection[.]")). Even construing pleadings liberally, courts "may not supply essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

U.S. 161, 167 (2002). That is, "individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'" Id. (quoting United States v. James Daniel Good Real Prop., 510 U.S. 43, 48 (1993)). Insofar as the Fifth Amendment applies to and restricts "only the Federal Government and not private persons," Pub. Utilities Comm'n of D.C. v. Pollak, 343 U.S. 451, 461 (1952), the Court's fundamental inquiry is whether ECMC "is a governmental actor to whom the prohibitions of the Constitution apply." San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 542 (1987); Binque v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008) (quoting Betts v. Brady, 316 U.S. 455, 462 (1942) ("Due process of law is secured against invasion by the federal Government by the Fifth Amendment and is safe-guarded against state action in identical words by the Fourteenth."), overruled on other grounds by Gideon v. Wainwright, 372 U.S. 335 (1963); Castillo v. McFadden, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States.")); Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001) (declining to extend Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), "to confer a right of action for damages against private entities acting under color of federal law"). The Court finds that it is

25

not.

    A.    <u>ECMC is not a Governmental Actor</u>

> [S]tate action requires *both* an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," *and* that "the party charged with the deprivation must be a person who may fairly be said to be a state actor."

<u>Am. Manufacturers Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 50 (1999) (quoting <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982)).  Under the circumstances of this case, this means that ECMC must have taken action pursuant to federal law, and that there was significant "state" involvement in ECMC's action.

    1.    <u>ECMC Acted in Accordance With Federal Authority</u>

ECMC's authority to take certain actions is derived from federal statutes and regulations.  It is ECMC's alleged acts and/or omissions concerning the administrative offset of Plaintiff's Social Security benefits that form the basis of Plaintiff's Due Process claim.  The first prong of the test is therefore met.  <u>Halzack Watkins v. Educ. Credit Mgmt. Corp.</u>, No. 2:10CV540, 2011 WL 2015479, at *11 (E.D. Va. May 12, 2011) ("[I]t appears clear that the alleged acts and omissions of ECMC fulfill the first prong of the test.  ECMC, a private non-profit corporation, derived its authority to issue the Notice and Order directly from federal statute—to wit, 20 U.S.C. § 1095a.").

2.   <u>ECMC's Actions do not Constitute Federal Action</u>

While ECMC may have acted pursuant to federal

authority, this does not transform its actions into "state

action" as the term is defined in Supreme Court jurisprudence.

To meet the second prong of the test, ECMC "must be a person who

may fairly be said to be a state actor." <u>Lugar</u>, 457 U.S. at 937.

> This may be because he is a state official,
> because he has acted together with or has obtained
> significant aid from state officials, or because
> his conduct is otherwise chargeable to the State.
> Without a limit such as this, private parties
> could face constitutional litigation whenever they
> seek to rely on some state rule governing their
> interactions with the community surrounding them.

<u>Id.</u>  For a private party's actions to constitute state action, it

must "make extensive use or state procedures with 'the overt,

significant assistance of state officials.'"  <u>Edmonson v.</u>

<u>Leesville Concrete Co.</u>, 500 U.S. 614, 622 (1991) (citation

omitted).  "[P]rivate use of state-sanctioned private remedies or

procedures does not rise, by itself, to the level of state

action."  <u>Id.</u>

This Court has already concluded that ECMC is a

guaranty agency.  Moreover, ECMC is a private non-profit

corporation and regularly described as such.  <u>Polleys</u>, 356 F.3d

at 1304; <u>Black v. Educ. Credit Mgmt. Corp.</u>, 459 F.3d 796, 798

(7th Cir. 2006); <u>In re Murphy</u>, 282 F.3d 868, 869 (5th Cir. 2002);

<u>Cherish Prod. Inc.</u>, 247 F. Supp. 2d at 1132; <u>Mees v. J.P. Morgan</u>

<u>Chase</u>, No. 2:13-CV-01892-KJM, 2014 WL 3687501, at *1 (E.D. Cal.

27

July 23, 2014); In re Howe, No. CV0703483AHM, 2008 WL 4184640, at
*1 (C.D. Cal. Sept. 5, 2008). Guaranty agencies such as ECMC
"act as fiduciaries of the DOE when they operate under the
FFELP." Rowe I, 559 F.3d at 1034. In the context of the FDCPA,
the Ninth Circuit has held that a guaranty agency is not a
governmental agency. Brannan v. United Student Aid Funds, Inc.,
94 F.3d 1260, 1263 (9th Cir. 1996) ("USA Funds is a private
nonprofit organization with a government contract; it is not a
government agency or employee.")

The record before the Court does not support a finding
that ECMC's actions are chargeable to the federal government.
First, ECMC's purported failure to comply with notice
requirements and/or failure to send any notice to Plaintiff
"cannot be regarded as serving any 'exclusively public
function.'" Halzack Watkins, 2011 WL 2015479, at *11. Second,
as the Court discussed above, ECMC's actions were taken pursuant
to its duties as a guaranty agency. Third, "[t]he contractual
reinsurance relationship between guaranty agencies such as ECMC
and the DoE, though prescribed by federal regulations, does not,
in and of itself, render such agencies federal actors." Id.
(citing Rendell-Baker v. Kohn, 457 U.S. 830, 840-41 (1982)).
Finally, neither the DOE nor any other federal agency was
involved with the issuance of the Notice, much less overtly so.
The Court accordingly concludes that ECMC's actions were not

federal action subject to the Due Process Clause of the Fifth
Amendment. Id.; George W. v. U.S. Dep't of Educ., 149 F. Supp.
2d 1195, 1204-10 (E.D. Cal. 2000) (concluding that the defendant
guaranty agency was not a state actor for purposes of the
plaintiff's Fifth Amendment Due Process claim).

For these reasons, ECMC's Motion is GRANTED as to
Plaintiff's Fifth Amendment Due Process claim (Count IV).

V.    Count III - Conversion

Plaintiff's conversion claim alleges that ECMC
knowingly and maliciously converted his monies to its own use,
which caused him damage. Compl. at ¶ 25. ECMC moves for summary
judgment on the grounds that 1) it did not request that DOT
withhold, nor did it withhold, any of Plaintiff's Social Security
benefits and 2) alternatively, the claim is preempted by the HEA.

Given that no federal claims remain, and because
Plaintiff has not asserted the existence of diversity
jurisdiction, the original basis for jurisdiction no longer
exists. The court "may decline to exercise supplemental
jurisdiction over a claim . . . if . . . [it] has dismissed all
claims over which it has original jurisdiction." 28 U.S.C.
§ 1367(c)(3); Sanford v. MemberWorks, Inc., 625 F.3d 550, 561
(9th Cir. 2010) (quoting Carnegie-Mellon Univ. v. Cohill, 484
U.S. 343, 350 n.7 (1988), superseded on other grounds by statute
as recognized in Fent v. Okla. Water Res. Bd., 235 F.3d 553, 557

29

(10th Cir. 2000)) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims.").  In the exercise of its discretion, and after balancing the relevant factors, the Court finds that none weigh in favor of retaining jurisdiction.  As such, the Court DISMISSES Plaintiff's conversion claim (Count III).  Rowe II, 730 F. Supp. 2d at 1289 (declining to exercise supplemental jurisdiction over the plaintiff's state law claims following the granting of summary judgment on the FDCPA claim); Rutz, 2012 WL 78394, at *3 (declining to exercise jurisdiction over the plaintiff's remaining state law claims after dismissing the FDCPA claim).

Even if the Court exercised supplemental jurisdiction, it would grant summary judgment in ECMC's favor as to the conversion claim.

> Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein, such as a tortious taking of another's chattels, or any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of the possession permanently or for an indefinite time.

Yoneji v. Yoneji, 136 Haw. 11, 16, 354 P.3d 1160, 1165 (Haw. Ct. App. 2015) (quoting Tsuru v. Bayer, 25 Haw. 693, 697 (Haw. Terr.

1920)).  Conversion requires the following acts:  "(1) A taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand."  Id. (citing Freddy Nobriga Enters., Inc. v. Haw. Dep't of Hawaiian Home Lands, 129 Hawai'i 123, 129, 295 P.3d 993, 999 (Haw. Ct. App. 2013)).

Based on the evidence before the Court, there is no genuine dispute that ECMC did not take anything from Plaintiff and it did not garnish Plaintiff's Social Security benefits. Hence, Plaintiff's conversion claim fails as a matter of law.

VI.  Miscellaneous Issues

Lastly, the Court addresses the remaining issues raised by Plaintiff.  In his Motion, Plaintiff requests a determination that:  1) he has no obligation to ECMC based on an alleged note dated January 29, 1979;[14] 2) ECMC failed to produce a copy of the note or inform him of the nature and amount of the debt prior to the commencement of the administrative offset of his Social Security benefits or at anytime thereafter as required by § 3716; 3) the note does not exist and/or there is no evidence of the loan; and 4) the administrative offset perpetrated by ECMC in the name of DOE is an unlawful breach of § 3716 and 31 C.F.R.

_____

[14]  Plaintiff repeatedly refers to the January 29, 1979 disbursement as a note for which ECMC has yet to provide a copy. In the Complaint, Plaintiff references a January 29, 1979 disbursement, Compl. at ¶ 8, but later refers to it as a loan dated January 29, 1979.  Id. at ¶ 21.

§ 285.4.[15]

As there are no claims remaining in this action, there is no basis to grant the relief sought. Significantly, even if this were not the case, Plaintiff could not obtain the declarations sought in the first and third requests above because they were not the subject of any of the claims set forth in the Complaint.[16] Indeed, Plaintiff conceded that the relief requested was set forth in the prayer for relief. Cf. George W., 149 F. Supp. 2d at 1211 (finding that Plaintiff's attempt to obtain rulings on issues not presented as claims in the amended complaint was improper in a motion for judgment on the pleadings; that "Plaintiff cannot seek advisory rulings by a judgment on the pleadings as to unasserted claims").

Plaintiff continues to challenge the very existence of a the debt upon which the administrative offset is based. He also submits that the Notes were required to have been the subject of a compulsory counterclaim pursuant to FRCP 13. These issues do not preclude the entry of summary judgment in ECMC's favor. To start, Plaintiff has been presented with the Notes in response to his multiple inquiries about the basis of the debt

---

[15]  Plaintiff explains that his requests for relief can be found in paragraph 1 of his prayer for relief. Pl.'s Mem. in Supp. of Mot. at 3 (citing Compl. at 7).

[16]  The second and fourth requests concerned determinations about ECMC's alleged violations of § 3716. The Court concluded that Plaintiff cannot maintain a § 3716 claim against ECMC.

owed and ECMC justifiably submitted the Notes as evidence to counter Plaintiff's allegation that there was no basis for administrative offset.  More importantly, however, the claims asserted by Plaintiff do not involve the resolution of the debt owed.[17]  Bennett v. Premiere Credit of N. Am. ("Bennett I"), No. 4:11-cv-124, 2012 WL 1605108, at **6-7 (S.D. Ga. May 8, 2012), aff'd Bennett II, 504 Fed. Appx. at 872 ("The Court's hypothetical determination of whether a debt collection counterclaim would be compulsory or permissive would have no effect on the Court's resolution of Bennett's claims.  As discussed, *supra*, Bennett has not demonstrated any entitlement to relief on any of the claims alleged in her complaint.").  In any event, no claims remain upon which to award any remedy or relief.

CONCLUSION

The Court concludes, based on the foregoing, that ECMC is entitled to summary judgment on all of the causes of action set forth in Plaintiff's Complaint and accordingly GRANTS ECMC's Motion.  Given the granting of ECMC's Motion, Plaintiff's Motion is HEREBY DENIED.  The Clerk's office is directed to close this

---

[17]  If anything, resolution with respect to the existence or amount of the debt should be raised at the administrative level. See, e.g., 34 C.F.R. § 30.24 (identifying opportunities for the debtor to obtain review of the existence or amount of a debt); cf. Bennett II, 504 Fed. Appx. at 879 (citing available administrative rights, procedures, and remedies pursuant to the HEA concerning the existence or amount of the plaintiff's debt in the context of administrative wage garnishment).

case.

        IT IS SO ORDERED.

        DATED:   Honolulu, Hawaii, April 25, 2017.



                                      Kevin S.C. Chang
                                      United States Magistrate Judge

CIVIL NO. 15-00242 KSC; <u>LIMA V. UNITED STATES DEPARTMENT OF EDUCATION, ET AL.</u>; ORDER: (1) DENYING PLAINTIFF CHARLES LIMA'S MOTION FOR SUMMARY JUDGMENT AND (2) GRANTING DEFENDANT EDUCATIONAL CREDIT MANAGEMENT CORPORATION'S MOTION FOR SUMMARY JUDGMENT